```
                                        ┌─────────────────────────────────┐
                                        │ USDC SDNY                       │
                                        │ DOCUMENT                        │
                                        │ ELECTRONICALLY FILED            │
UNITED STATES DISTRICT COURT            │ DOC #: _____         │
SOUTHERN DISTRICT OF NEW YORK           │ DATE FILED:  JAN 0 8 2014       │
---------------------------------------X└─────────────────────────────────┘
                                       :
JOSEPHINE SIMMONS,                     :
                                       :
                          Plaintiff,   :
                                       :          13 Civ. 1724 (KBF)
              -v-                      :
                                       :          MEMORANDUM
                                       :          DECISION & ORDER
CAROLYN W. COLVIN, Acting Commissioner :
of Social Security,                    :
                                       :
                          Defendant.   :
                                       X
---------------------------------------
```

KATHERINE B. FORREST, District Judge:

Plaintiff Josephine Simmons seeks review of the decision by defendant

Commissioner of Social Security ("the Commissioner") denying her disability

insurance benefits application. On April 12, 2011, plaintiff first filed an application

for benefits, alleging that she became unable to work on February 19, 2011. (R. at

68, 128.) The Commissioner denied plaintiff's application on June 6, 2011. (R. at

69–72.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),

and appeared before ALJ Michael J. Stacchini on December 2, 2011. (R. at 33–66,

73–74.) On December 20, 2011, the ALJ issued a decision finding plaintiff not

disabled under the Social Security Act. (R. at 23–29.) On January 23, 2013, the

Appeals Council denied plaintiff's request for review. (R. at 1–3.)

On March 14, 2013, plaintiff filed this action seeking judicial review of the

ALJ's decision. (ECF No. 1.) Now before the Court are plaintiff's motion for

judgment on the pleadings ("Pl.'s Mot.," ECF No. 10) and defendant's cross-motion

for judgment on the pleadings ("Def.'s Mot.," ECF No. 12).  For the reasons set forth below, defendant's motion is GRANTED and plaintiff's motion is DENIED.

## I.  FACTUAL BACKGROUND

The Court recites here only those facts relevant to its review.[1]  This Court reviews the ALJ's decision to determine whether there is substantial evidence to support her determination that plaintiff was not disabled between April 12, 2011, when she applied for benefits, and the date of the ALJ's decision, December 20, 2011.

Plaintiff, a former home attendant, alleges that she was disabled as of February 19, 2011, due to back pain, leg pain, and high blood pressure.  (R. at 46, 60, 132.)  In her hearing testimony and her application for benefits, plaintiff stated that she felt pain in the lower left side of her back going down the left leg to her knee, and that it would spread to the right side of her lower back.  (R. at 148.)  Plaintiff testified that sitting, walking, and standing too long would bring on the pain, that she took Motrin when she could not suffer pain any more, and that Motrin relieved her pain for about half an hour.  (Id.)  She further stated that using a cane and ice pack relieved some pressure and pain.  (R. at 53–54, 149.)  Plaintiff said she would be able to stand for about four hours but not six.  (R. at 49–50.)

Dr. Arnold B. Wilson, an orthopedic surgeon, treated plaintiff beginning in July 2008. (R. at 164–68.)  He reported limitations in the range of motion of her left shoulder and lower back and tenderness in her lower back, but normal strength and

---

[1] A thorough summary of Plaintiff's medical history is set forth in the administrative record.

no sensory deficits.  (R. at 167.)  Dr. Wilson diagnosed plaintiff with a herniated lumbar disc and left shoulder impingement.  (R. at 164.)

Plaintiff was treated at the Lincoln Medical Center emergency room from late 2008 through 2010.  (R. at 169–74, 177–90.)  On May 27, 2008, x-rays of plaintiff's left shoulder and lumbosacral spine appeared normal.  (R. at 171–72.)  A December 4, 2009 abdominal sonogram revealed no acute abnormality.  (R. at 173.)

On February 21, 2011, plaintiff again visited the Lincoln Medical Center emergency department.  (R. at 191–204.)  She complained of lower back pain for more than a year and a history of dislocated discs in her back.  (R. at 195, 197–98.)  Dr. Sivasubramanian T. Narayanan reported normal findings on examination.  (R. at 192.)

Plaintiff returned to Dr. Wilson for follow-up care on March 4 and 31, 2011.  (R. at 205, 207.)  Dr. Wilson reported that plaintiff had been having significant pain in her lower back with radiation down her left leg following an accident during her work as a home health aide.  (R. at 206.)  He noted that x-rays showed some degenerative disease with no acute abnormalities, and diagnosed low back pain.  (Id.)  The doctor stated that plaintiff was "totally disabled."  (R. at 207–09.)

Plaintiff underwent physical therapy from March 11 through May 19, 2011.  (R. at 212–24.)  She reported feeling better on at least four occasions, and notes show that she tolerated treatment well.  (R. at 215, 219, 221, 268–76, 278, 281.)

An April 11, 2011 MRI revealed mild degenerative changes within the lower lumbar spine.  (R. at 229.)

3

On May 20, 2011, Dr. Joshi Dipti, a consultative physician, noted that plaintiff had a history of hypertension and low back pain on the left side. (R. at 238.) Plaintiff described her pain as sharp and achy and said that it was worse with walking, standing, and sitting, especially for prolonged times. (Id.) Dr. Dipti reported that plaintiff was obese, was in no acute distress, and walked with a slight limp. (R. at 239.) She could walk on heels and toes, squatted to 25%, and had a normal stance. (Id.) Plaintiff told Dr. Dipti that she used a cane for pain, weightbearing, and balance; the doctor also observed that plaintiff used a cane to get on and off the exam table and to rise from a chair. (Id.) Examination of plaintiff's cervical spine was normal. (R. at 239–40.) Plaintiff had a full range of motion in her hips, knees, ankles, shoulders, elbows, forearms, and wrists; all joints were stable and non-tender. (R. at 240.) Dr. Dipti diagnosed plaintiff with obesity and low back pain "with mention of sciatica and radicular symptoms." (Id.)

Plaintiff's attorney submitted further medical evidence to the Appeals Council after the ALJ's December 20, 2011 decision. (See R. at 255–98, 300–01, 305–09.) Dr. Wilson continued to refer plaintiff for physical therapy. (R. at 255–98.) Plaintiff tolerated treatment well on some dates, and reported feeling better at sessions in October. (R. at 294–96.) In a February 13, 2012 workers' compensation report, Dr. Wilson indicated that plaintiff could sit for two hours with rests, stand for one hour with rests, and walk for one hour with rests, in an eight-hour workday. (R. at 298.) The doctor concluded that plaintiff was physically ready to return to an alternate duty job within her physical capabilities. (Id.) On September 2, 2012,

plaintiff returned to the Lincoln Medical Center emergency department; x-rays revealed muscle spasm and moderate degenerative joint disease, and the attending physician discharged plaintiff to home and self-care with a diagnosis of lumbargo. (R. at 307–09.)[2]

David Festa, a vocational expert ("VE"), testified at plaintiff's hearing on December 2, 2011. (R. at 57–66.)  The VE identified plaintiff's former work experience as a "home attendant" and testified that plaintiff had performed that job at the heavy to very heavy exertional level. (R. at 60–61.) The ALJ presented a hypothetical individual to the VE who could perform a full range of light work, but with certain limitations, including using a cane in her dominant hand and alternating between sitting and standing. (R. at 61.) The VE identified two jobs that such a person could perform: counter clerk, with 414,730 jobs in the national economy and 13,490 locally, and tanning salon attendant, with 17,280 jobs nationally and 1,480 locally.  (R. at 62.)[3]

---

[2] On January 23, 2013, the Appeals Council denied plaintiff's request to review the ALJ's decision of December 20, 2011. (R. at 1–3.) The Appeals Council stated that the additional evidence submitted after the ALJ issued his decision did not warrant a change in the ALJ's decision, because the information related to a time later than December 20, 2011. (R. at 23.)

[3] Based on the VE's testimony, the Court acknowledges—and has no reason to doubt—that "tanning salon attendant" appeared in the Dictionary of Occupational Titles ("DOT") with the statistics above. (See R. at 62–63.)  That satisfies the requirements of Social Security Ruling 83–12 and provides substantial evidence for the ALJ's decision. See McDonaugh v. Astrue, 672 F. Supp. 2d 542, 549 (S.D.N.Y. 2009).  However, the Court must note that in the present economy, and given the facts as set forth herein, this seems like an unlikely job for plaintiff.  In any event, the VE testified that plaintiff would also be able to perform the job of counter clerk, a much more widely available job. (See R. at 62.)

## II.   STANDARDS OF REVIEW

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

### B. The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations.  See 20 C.F.R. §§ 404.1520, 416.920; DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998).  The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P, App. 1 ["Appendix 1"].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

C.  Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the Commissioner has applied the correct legal standard and whether her findings of fact are supported by substantial evidence.  When these two conditions are met, the Commissioner's decision is final. 42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence.").

7

If the Commissioner and ALJ's findings as to any fact are supported by substantial evidence, then those findings are conclusive.  42 U.S.C. § 405(g); <u>Diaz v. Shalala</u>, 59 F.3d 307, 312 (2d Cir. 1995).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996).

The Court must consider the record as a whole in making this determination, but it is not for this Court to decide <u>de novo</u> whether the plaintiff is disabled.  <u>See Veino</u>, 312 F.3d at 586 ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."); <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998); <u>Beauvoir v. Chater</u>, 104 F.3d 1432, 1433 (2d Cir. 1997).

The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists.  <u>See Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); <u>see also DeChirico</u>, 134 F.3d at 1182–83 (affirming an ALJ decision where substantial evidence supported both sides).

## III.   DISCUSSION

Particularly in light of the deferential standard of review required of this Court, the ALJ correctly conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920.  At step one, the ALJ found that plaintiff had not engaged in

substantial gainful activity since February 19, 2011, the alleged onset date. (R. at 25.) At steps two and three, the ALJ found that plaintiff had two severe impairments—disc bulges and degenerative changes in the lumbar spine—but that she had no impairment or combination if impairments that met or medically equaled the requirements of any impairment listed in Appendix 1. (Id.) Having found none, the ALJ then determined plaintiff's RFC: she could perform light work, except that she could balance, stoop, kneel, crouch, and climb ramps or stairs only occasionally; could never climb ladders, ropes, or scaffolds; required a job allowing her to sit or stand alternatively at will; and required the use of a cane in her dominant hand for uneven terrain or prolonged ambulation. (R. at 25–26.) At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a home health aide. (R. at 27.) Finally, at step five, the ALJ concluded that, based on the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, plaintiff was able to perform jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff was not disabled.

The ALJ supported each of his adverse determinations with substantial evidence.

At step two, the ALJ correctly consulted Appendix 1 and found that plaintiff's severe impairments did not meet or medically equal the severity of an impairment listed in appendix 1. (See R. at 25.) The ALJ consulted listing 1.04(A), "Evidence of nerve root compression characterized by . . . limitation of motion of the spine," but

rejected that possibility because plaintiff lacked the necessary muscle atrophy, as documented by Dr. Dipti's report.  (R. at 25 (citing Appendix 1), 27.)

At step three, the ALJ relied on substantial evidence and appropriately assessed plaintiff's RFC.[1]  (See R. at 25–26.)  The ALJ gave the greatest weight to the statement of Dr. Dipti, a consultative examining physician, who reported primarily normal examination results.  (See R. at 27, 238–42.)  The opinions of consultative "nonexamining sources" can constitute substantial evidence in support of an ALJ's determination, even when contrary to treating physician's assessments (such as that of Dr. Wilson), "provided they are supported by evidence in the record."  Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995); see also Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence.").

Here, the ALJ appropriately found Dr. Dipti's report, including its detailed examination results, to be credible, as they were "based on a thorough in person examination and . . . consistent with the objective medical evidence."  (R. at 27.)  Dr. Dipti found normal muscle strength throughout plaintiff's legs, as well as a well-preserved range of motion.  (Id.)  The ALJ noted that the doctor's reports were consistent with plaintiff's testimony that she could perform light work, that she could walk several blocks with a cart to shop, that she did her own cooking,

---

[1] Plaintiff bears the burden to present evidence that she lacked the RFC to perform substantial gainful activity.  See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled."); 20 C.F.R. § 404.1545(a)(3) ("[Y]ou are responsible for providing the evidence we will use to make a finding about your [RFC].").

cleaning, and laundry, and that she only needed her cane for long periods.   (Id.)
Dr. Dipti's report thus provided substantial evidence for the ALJ's RFC finding,
which limited plaintiff to light work, consistent with the report.  (R. at 26.)

The ALJ gave little weight to the report of Dr. Wilson, plaintiff's treating
physician, who stated that plaintiff was "disabled."  (R. at 27.)  As the ALJ correctly
noted, the determination that a plaintiff is disabled is not a medical opinion, but
rather an administrative finding that is "reserved to the Commissioner"; the ALJ
therefore need "not give any special significance" to a doctor's view of a patient's
disability.  20 C.F.R. § 404.1527(d)(3).  Additionally, the ALJ properly determined
that Dr. Wilson's opinion was inconsistent with plaintiff's testimony and with the
objective medical evidence.  (R. at 27.)  In fact, while Dr. Wilson stated that plaintiff
was "totally disabled," his medical assessment was "low back pain with radiation
down the left leg," to be treated with physical therapy and Vicodin.  (R. at 206–07.)

Plaintiff claims that the ALJ improperly failed to develop the record before
dismissing Dr. Wilson's opinion in favor of Dr. Dipti's.  (See Mem. of L. in Supp. of
Pl.'s Mot. ("Pl.'s Mot.") 5–7, ECF No. 11.)  It is true that the ALJ must develop the
record fully.  Lopez v. Secretary of Dep't of Health & Human Servs., 728 F.2d 148,
150 (2d Cir. 1984).  However, the ALJ here did just that through numerous
questions about plaintiff's condition over the course of a lengthy administrative
hearing, amounting to a 33-page transcript.  (See R. at 33–66.)  Therefore, the cases
cited by plaintiff are distinguishable.  See Moran v. Astrue, 569 F.3d 108, 113 (2d
Cir. 2009) (in which the transcript of the plaintiff's hearing was fewer than 13 pages

long); Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990) (in which the ALJ "failed to probe into the frequency and severity of [plaintiff's asthma] attacks"); Lopez, 728 F.2d at 150 (in which the ALJ refused to hear testimony from a witness). The ALJ sufficiently developed the record in this case.

Plaintiff's testimony as to her daily activities provided further substantial evidence for the ALJ's decision; it also contradicted both Dr. Wilson's statement that plaintiff was "totally disabled" and plaintiff's own subjective allegations that she was disabled. (See R. at 26, 49–50, 53–54, 148–49.) Plaintiff stated that using a cane relieved some pain and that she could stand for about four hours; that she lived alone in an apartment and prepared her own meals; that she swept, did laundry, and mopped floors; that she took public transportation; and that she walked to the supermarket and to her religious services. (R. at 41–42, 49–50, 53–55, 141–42, 149.) That described level of activity is consistent with the medical record and inconsistent with an inability to perform any work. (R. at 27.) The ALJ was thus entitled to reject plaintiff's allegations of her disability as not entirely credible. "It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses." Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Contrary to plaintiff's assertions (see Pl.'s Mot. 12–15), the ALJ did consider the seven factors relevant to a credibility determination, including plaintiff's daily activities, her pain and symptoms, her medications, and her treatments other than medications. (See R. at 26–27.)

Even if Dr. Wilson's opinion were credible and consistent with the medical record, this Court would nonetheless be required to uphold the ALJ's finding based on the substantial evidence presented by Dr. Dipti and plaintiff's testimony. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner." Veino, 312 F.3d at 586. That is true even if substantial evidence would support either a finding of disabled or not disabled, for "[w]here there is substantial evidence to support either position, the determination is one to be made by the factfinder." Alston, 904 F.2d at 126.

At step five, the ALJ properly concluded that, while plaintiff was unable to perform her past relevant work as a home health aide, she retained the ability to adjust to other jobs existing in significant numbers in the national economy. (R. at 17–18.) Plaintiff argues that the ALJ and vocational expert ("VE") who testified at her administrative hearing insufficiently took into account the need for work with a sit/stand option. (See Pl.'s Mot. at 16.) However, both the ALJ and VE accounted for plaintiff's limitation to jobs that allowed for her to alternate sitting and standing. (See R. at 61 ("I want you to also assume that this person is allowed to sit or stand alternatively at will . . . .").) Even so, the VE identified two jobs that a person of plaintiff's profile could perform that existed in the national economy. (R. at 60–62.) That vocational opinion constituted substantial evidence to support the ALJ's decision regarding plaintiff's RFC to perform other jobs. See Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983).

13

Finally, the Appeals Council properly determined that the evidence submitted after the ALJ's decision did not warrant changing that decision. (See R. at 1–3.) Evidence submitted after an ALJ issues his or her decision may warrant remand if it is "new" and "material" and there is a showing of good cause for failure to present the additional evidence in the prior proceeding. 42 U.S.C. § 405(g). To be "new" and "material," the evidence must not be "cumulative of what is already in the record," and it must be "both relevant to the claimant's condition during the time period for which benefits were denied and probative." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). Here, most of the evidence submitted post-dates the period at issue in this case, which ended on December 2, 2011, and is thus not "new." (See R. at 298 (dated February 13, 2012), 305–09 (dated September 20, 2012).)[5] The other submissions provide no factual evidence beyond that which already existed in the record related to plaintiff's physical therapy and medical appointments. (See R. at 256–97, 301.)

---

[5] Even if the report completed by Dr. Wilson on September 12 did partially relate to the disability period in question, it is not material. Plaintiff claims that the form "directly contradicts the RFC found by the ALJ." (See Pl.'s Mot. 11.) However, Dr. Wilson completed that form for a workers' compensation claim. "[T]he standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act," and "an opinion rendered for purposes of workers' compensation is not binding on the [Commissioner]." Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994); see also 20 C.F.R. § 404.1504.

IV.   CONCLUSION

For these reasons, defendant's motion for judgment on the pleadings is
GRANTED and plaintiff's motion for judgment on the pleadings is DENIED.  The
Clerk of Court is directed to close the motions at ECF No. 10 and 12 and to
terminate this action.

SO ORDERED.

Dated:      New York, New York
            January 8, 2014

                                    _____
                                        KATHERINE B. FORREST
                                        United States District Judge